[Cite as *State v. Atkins*, 2014-Ohio-1091.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 12-CA-39 |
| SHEVANN R. ATKINS | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal appeal from the Fairfield County
                             Court of Common Pleas, Case No. 2011-
                             CR-380


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      March 19, 2014


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOCELYN KELLY                         PAMELA L. PINCHOT
Assistant Prosecuting Attorney        1800 Lyons Road
239 West Main Street, Ste. 101        Dayton, OH 45458
Lancaster, OH 43130

*Gwin, J.,*

{¶1} Defendant-appellant Shevann R. Atkins ("Atkins") appealed her convictions and sentences in the Fairfield County Court of Common Pleas for one count of theft, a fourth-degree felony in violation of R.C. 2913.02(A)(3), one count of illegal use of supplemental nutrition assistance program benefits, a fourth-degree felony in violation of R.C. 2913.46(B), and one count of tampering with records, a third-degree felony in violation of R.C. 2913.42(A)(1). *State v. Atkins*, 5th Dist. Fairfield No. 12-CA-39, 2013-Ohio-2236. This Court upheld appellant's conviction and sentences. Id.

{¶2} By Judgment Entry filed September 24, 2013, this Court granted Atkins' motion to re-open her direct appeal for the sole purpose of addressing the issue of whether counsel was ineffective and Atkins prejudiced by the failure to file a motion to suppress her statements made during the June 26, 2011 meeting.

## Assignment of Error

{¶3} Atkins has raised the following assignment of error

{¶4} "I. SHEVANN ATKINS WAS DENIED HER CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AND WAS PREJUDICED BY THE FAILURE TO FILE A MOTION TO SUPPRESS HER STATEMENTS MADE DURING THE JUNE 26, 2011, MEETING."

## Analysis

{¶5} In her present motion to re-open, appellant maintains she received ineffective assistance of appellate counsel on direct appeal. The standard for reviewing claims for ineffective assistance of counsel was set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984). Ohio adopted this standard in the

case of *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989). These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel.

{¶6} First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and volatile of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether the defense was actually prejudice by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. We apply the *Strickland* test to all claims of ineffective assistance of counsel, either trial counsel, or appellate counsel. *State v. Blacker,* 5th Dist. No. 2005-CA-41, 2006-Ohio-5214.

{¶7} When counsel's alleged ineffectiveness involves the failure to pursue a motion or legal defense, this actual prejudice prong of *Strickland* breaks down into two components. First, the defendant must show that the motion or defense "is meritorious," and, second, the defendant must show that there is a reasonable probability that the outcome would have been different if the motion had been granted or the defense pursued. See *Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986); see, also, *State v. Santana,* 90 Ohio St.3d 513, 739 N.E.2d 798 (2001), citing *State v. Lott,* 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

{¶8} Trial counsel's failure to file a suppression motion does not per se constitute ineffective assistance of counsel. *State v. Madrigal,* 87 Ohio St.3d 378, 389,

2000–Ohio–0448. Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted. *State v. Lavelle,* 5th Dist. No. 07 CA 130, 2008–Ohio–3119, at ¶ 47; *State v. Cheatam,* 5th Dist. No. 06–CA–88, 2007–Ohio–3009, at ¶ 86.

**{¶9}** In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court adopted a set of prophylactic measures designed to safeguard the constitutional guarantee against self-incrimination. *J.D.B. v. North Carolina* __ U.S.___, 131 S.Ct. 2394, 2401, 180 L.Ed.2d 310(July 16, 2011). Prior to questioning, a suspect "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602; *see also Florida v. Powell,* 559 U.S. ——, ——, 130 S.Ct. 1195, 1198, 175 L.Ed.2d 1009 (2010).

**{¶10}** Because these measures protect the individual against the coercive nature of custodial interrogation, they are required " 'only where there has been such a restriction on a person's freedom as to render him "in custody." ' " *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (per curiam) (quoting Oregon v. *Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam)). Whether a suspect is "in custody" is an objective inquiry. *J.D.B. v. North Carolina,* 131 S.Ct. 2394, 2402, 180 L.Ed.2d 310. In *J.D.B.,* the United States Supreme Court further explained,

> "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given

those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (internal quotation marks, alteration, and footnote omitted).

See also *Yarborough v. Alvarado*, 541 U.S. 652, 662–663, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004); *Stansbury*, 511 U.S., at 323, 114 S.Ct. 1526; *Berkemer v. McCarty*, 468 U.S. 420, 442, and n. 35, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Rather than demarcate a limited set of relevant circumstances, we have required police officers and courts to "examine all of the circumstances surrounding the interrogation," *Stansbury*, 511 U.S., at 322, 114 S.Ct. 1526, including any circumstance that "would have affected how a reasonable person" in the suspect's position "would perceive his or her freedom to leave," id., at 325, 114 S.Ct. 1526. On the other hand, the "subjective views harbored by either the interrogating officers or the person being questioned" are irrelevant. Id., at 323, 114 S.Ct. 1526. The test, in other words, involves no consideration of the "actual mindset" of the particular suspect subjected to police questioning. *Alvarado*, 541 U.S., at 667, 124 S.Ct. 2140; *see also*

*California v. Beheler*, 463 U.S. 1121, 1125, n. 3, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam).

The benefit of the objective custody analysis is that it is "designed to give clear guidance to the police." *Alvarado*, 541 U.S., at 668, 124 S.Ct. 2140. *But see Berkemer*, 468 U.S., at 441, 104 S.Ct. 3138 (recognizing the "occasiona[l] ... difficulty" that police and courts nonetheless have in "deciding exactly when a suspect has been taken into custody"). Police must make in-the-moment judgments as to when to administer *Miranda* warnings. By limiting analysis to the objective circumstances of the interrogation, and asking how a reasonable person in the suspect's position would understand his freedom to terminate questioning and leave, the objective test avoids burdening police with the task of anticipating the idiosyncrasies of every individual suspect and divining how those particular traits affect each person's subjective state of mind. See id., at 430–431, 104 S.Ct. 3138 (officers are not required to "make guesses" as to circumstances "unknowable" to them at the time); *Alvarado*, 541 U.S., at 668, 124 S.Ct. 2140 (officers are under no duty "to consider ... contingent psychological factors when deciding when suspects should be advised of their *Miranda* rights").

*J.D.B. v. North Carolina* __ U.S.___, 131 S.Ct. 2394, 2402, 180 L.Ed.2d 310. *Accord, State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 28, ¶27. The test involves no consideration of the particular suspect's "actual mindset." *Yarborough v. Alvarado,* 541U.S. 652, 667, 124 S.Ct. 2140, 158 L.Ed.2d 938(2004). *Accord, State v.*

*Mason*, 82 Ohio St.3d 144, 153, 1998-Ohio-370, 694 N.E.2d 932(1998); *State v. Gumm,* 73 Ohio St.3d 413, 429, 1995 Ohio 24, 653 N.E.2d 253(1995).

**{¶11}** The determination of whether a custodial interrogation has occurred requires an inquiry into how a reasonable person in the detainee's position would have felt in the same position. Id. *Miranda* warnings are not required simply because the questioning takes place in a coercive atmosphere. *See Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714(1977) (a coercive environment does not automatically convert a noncustodial situation into one requiring *Miranda* warnings). *State v. Hoffner,* 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶26; *State v. Mason*, 82 Ohio St.3d 144, 154, 694 N.E.2d 932, 946(1998). Nor is the requirement of warnings to be imposed simply because the questioned person is one whom the police suspect. *Oregon v. Mathiason*, 429 U.S. at 495, 97 S.Ct. 711, 50 L.Ed.2d 714; *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶47.

**{¶12}** In the case at bar, Atkins was not in custody when she was questioned by Investigator Kessler, but was there voluntarily. Atkins testified that Job and Family Services asked her to come in and she drove herself to the interview. She was not questioned at a police station, but at the Job and Family Services Building. She was not under arrest and was free to leave at any time. There was not any restraint of her movement such that a reasonable person would believe they were under arrest.

**{¶13}** The fact that the investigator may have used deception to get her to come to the interview is not controlling. Deception is a factor bearing on voluntariness. *Schmidt v. Hewitt*, 573 F.2d 794, 801(3rd Cir. 1978). "However, this factor, standing alone, is not dispositive of the issue." *State v. Wiles*, 59 Ohio St.3d 71, 81, 571 N.E.2d

97(1991). Here, the authorities may have used deception to get Atkins to the interview, but deception was not used during the interview. Atkins never refused to answer questions, never asked for the questioning to stop, and never asked for medical attention or a lawyer. *See State v. Biros*, 78 Ohio St.3d 426, 441, 678 N.E.2d 891(1997) (no custodial interrogation where accused voluntarily went to the police station in his own vehicle, was not arrested, and was free to leave at any time). The interview lasted less than one hour.

{¶14} The investigator did confront Atkins with the strength of the evidence against her. However, in *State v. Cooey*, 46 Ohio St.3d 20, 28, 544 N.E.2d 895, 908(1989), the court clearly stated that admonitions to tell the truth directed at a suspect by police officers are not coercive in nature. *See Frazier v. Cupp* (1969), 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684; *State v. Wiles*, 59 Ohio St.3d 71, 81, 571 N.E.2d 97, 112(1991). "A defendant's will is not overborne simply because he is led to believe that the government's knowledge of his guilt is greater than it actually is." *Ledbetter v. Edwards*, 35 F.3d 1062, 1070(6th Cir. 1994).

{¶15} Because Atkins was not subject to a custodial interrogation on June 26, 2011, she was not subject to *Miranda.*

{¶16} In addition, an examination of the totality of the circumstances in this case indicates that Atkins' statements were voluntarily made.

{¶17} In *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473(1986), the court held that "police over-reaching" is a prerequisite to a finding of involuntariness. Evidence of use by the interrogators of an inherently coercive tactic (*e.g.,* physical abuse, threats, deprivation of food, medical treatment, or sleep) will

trigger the totality of the circumstances analysis. *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844, 854(1988).

**{¶18}** In the cause *sub judice,* Atkins does not assert that she was physically deprived or mistreated while at the interview, nor does the record reveal any type of physical deprivation. Moreover, there is no evidence that police subjected Atkins to threats or physical abuse, or deprived her of food, sleep, or medical treatment. See *State v. Cooey*, 46 Ohio St.3d 20, 28, 544 N.E.2d 895, 908(1989).

**{¶19}** At the time of the interview, Atkins was attending classes at Ohio University. Atkins was only interviewed once and that interview was relatively short in length, just under an hour. Investigator Kessler testified that she was "very sharp" during the interview and asked questions. Atkins did tell the investigator that she struggled with narcolepsy, but did not mention having any problems that day. When Atkins asked about getting a lawyer, Investigator Kessler replied, "You're welcome to a lawyer at any time you want a lawyer." He further told Atkins she was free to leave the interview at any time. (2T. at 407-408).

**{¶20}** Atkins' decision not to file a motion to suppress in this case may have been based on a reasonable trial strategy.

**{¶21}** The Ohio Supreme Court has recognized that if counsel, for strategic reasons, decides not to pursue every possible trial strategy, defendant is not denied effective assistance of counsel. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523(1988). When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d

1189(1980), citing *People v. Miller*, 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089(1972); *State v. Wiley,* 10th Dist. Franklin No. 03AP-340, 2004-Ohio-1008, ¶ 21.

**{¶22}** A defendant has no constitutional right to determine trial tactics and strategy of counsel. *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298(1999); *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶150; *State v. Donkers,* 170 Ohio App.3d 509, 867 N.E.2d 903, 2007-Ohio-1557(11th Dist.), ¶183. Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. Id. In the case at bar, the evidence before this course indicates that the decision not to file a motion to suppress may have been a tactical decision by trial counsel. In *State v. Madrigal*, the Ohio Supreme Court noted,

> Filing a motion to suppress is not without risks, and the fact that counsel filed a motion for leave to file the motion to suppress, and later withdrew that motion, is compelling evidence of a tactical decision. It is not mere speculation to presume that defense counsel obtained information concerning the suppression motion that led to its withdrawal. Further, the "adversarial testing process" worked to Madrigal's benefit. The gun that was seized during Madrigal's arrest was never conclusively tied to the murder in this case. Through cross-examination of the state's expert, as well as the presentation of his own expert, Madrigal's counsel were able to show that the gun was not necessarily the murder weapon.

87 Ohio St.3d 378, 389, 2000-Ohio-448, 712 N.E.2d 52.

**{¶23}** In the case at bar, the defense utilized cross-examination, Atkins' testimony and argument to present to the jury a picture of overreaching by the state in

its zeal to obtain a conviction. Even if ruled inadmissible in the state's case in chief, the trial court "might have allowed its use to impeach [appellant] if [s]he later chose to testify at trial. See *United States v. Salvucci*, 448 U.S. 83, 93–94, 100 S.Ct. 2547, 2554, 65 L.Ed.2d 619, 629(1980); 4 LaFave, Search and Seizure (2 Ed.1987) 240–242, Section 11.2(d), and 349–351, Section 11.3(g); 1 Hall, Search and Seizure (2 Ed.1991) 244–245, Section 5:42." *State v. Campbell*, 69 Ohio St.3d 38, 44-45, 1994-Ohio-492, 630 N.E.2d 339. Even assuming defense counsel's tactics were questionable, we are unpersuaded that these trial tactics constituted ineffective assistance of counsel. See *State v. Clayton* 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 37, 402 N.E.2d 1189, 1192(1980).

**{¶24}** Given the record in the case at bar, we cannot conclude that there is a reasonable probability that a motion to suppress would have been successful. See, e.g., *State v. Fair,* 2nd Dist. No. 24120, 2011–Ohio–3330*, ¶ 27.* Accordingly, Atkins has not satisfied the second prong of the Strickland test and, therefore, has not demonstrated that she received ineffective assistance of counsel.

**{¶25}** Atkins' sole assignment of error is overruled.

{¶26}  For the foregoing reasons, the judgment of the Court of Common Pleas, of

Fairfield County, Ohio, is affirmed.

By Gwin, J.,

Hoffman, P.J., and

Farmer, J., concur