[Cite as *State v. Smith*, 2024-Ohio-2416.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Andrew J. King, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. CT2023-0079 |
| JOSH SMITH | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING: Criminal Appeal from the Court of Common Pleas, Case No. CR2023-0268

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: June 24, 2024

APPEARANCES:

For Plaintiff-Appellee

RONALD WELCH
PROSECUTING ATTORNEY
JOHN CONNOR DEVER
ASSISTANT PROSCUTOR
27 North Fifth Street, P.O. Box 189
Zanesville, Ohio 43702

For Defendant-Appellant

APRIL F. CAMPBELL
CAMPBELL LAW, LLC
545 Metro Place South
Suite 100
Dublin, Ohio 43017

*Wise, J.*

**{¶1}** Defendant-Appellant, Josh H. Smith, brings this appeal from his conviction and sentence in the Muskingum County Court of Common Pleas of one count of receiving stolen property, a felony of the fourth degree, and one count of receiving stolen property, a felony of the fifth degree.  Plaintiff-Appellee is the State of Ohio. We affirm Smith's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

*2021 Honda Civic stolen from BP Gas Station on April 10, 2023*

**{¶2}** On April 10, 2023 around noon, Willie Robinson drove his 2021 greenish-silver Honda Civic to the BP Gas Station on State Route 79 in Heath, Ohio. He left the car running while he went into the gas station to grab a couple of bottles of pop.  On his way in, he noticed a tall white male with tattoos walking in front of the gas station building.

**{¶3}** Robinson put his bottles of pop on the counter and saw Appellant Smith - the tall white male with tattoos - jump into his Honda Civic and take off.  Robinson dropped the pop and ran out of the gas station to try to stop his car.  Smith threw the Honda into reverse and took off.

**{¶4}** Robinson called the police and filed a police report.  He also put a public feed on Facebook which received over 5,000 shares alerting the community that his Honda was stolen.

*Robinson receives a text message about his stolen Honda*

**{¶5}** On April 21, 2023, Jason Browning, who owned a car dealership in Zanesville, Ohio, spotted a newer Honda at a Speedway gas station that didn't have stock wheels.  He texted Robinson notifying him that he thought he spotted his stolen car.  He

took a picture of the car's license plate with his cell phone and sent it to Robinson. Robinson texted him back that it was his stolen Honda.

{¶6}    Browning followed the Honda to the Ollie's parking lot and called the South Zanesville police department. Ollie's was located on South Maysville Pike Road in Muskingum County adjacent to the Speedway.

*Officers from South Zanesville police department dispatched to investigate*

{¶7}    Police Chief Mark Ross and Officer Gary Spung arrived at the Ollie's parking lot to investigate a "possible stolen vehicle in the parking lot of Ollie's." The Honda was empty.

{¶8}    The Police Chief ran the plates and they didn't match the Honda reported stolen.

{¶9}    He learned that the plates had been stolen from a resident of Lancaster, Ohio.

{¶10}  Officer Spung stayed at the Ollie's location while the Police Chief went to the Speedway gas station to talk with the manager and review the videotapes that he knew the gas station had installed as part of their security protocol.

{¶11}  Officer Spung got a description of the male driving the Honda; a tall white male with tattoos from head-to-toe. He waited for Smith, the tall white male with tattoos, exit the Ollie's building and stopped him in the parking lot and detained him. He patted Smith down for officer safety and noted that the key fob to the Honda was in his right front pocket. Smith was also carrying a Slurpee drink. Officer Spung was wearing a body camera that day that recorded much of his encounter with Smith. (State's Exh. 37, 39).

{¶12} Officer Spung escorted Smith to the back seat of his cruiser and read Smith the *Miranda* warning. The exchange was captured on the body camera. Smith nodded that he understood his *Miranda* rights. When asked questions about the Honda, Smith responded that he had no ties to it and mumbled when asked if he drove it. During the exchange with Officer Spung, Smith first told him he had nothing to say and later stated he knew nothing about the Honda. The body camera worn by the Police Chief also showed part of the exchange with Smith, who denied he stole the Honda.

*Speedway videos.*

{¶13} Meanwhile, the Police Chief went to the Speedway gas station to talk with the station manager and view any video surveillance tapes for that day. The Chief knew from his prior experience that the Speedway did have a working video surveillance set-up. The video tape showed a silver Honda pull up to the gas station at 2:41 and 50 seconds. It was the same Honda that the Chief observed earlier at the Ollie's parking lot. Another video tape showed Smith purchasing a drink, like a Slurpee, at the gas station counter. The video showed Smith exiting the station with the drink and return to the Honda.

*Inventory of Honda*

{¶14} After Smith was arrested, an inventory of the Honda's contents was done prior to towing. In the center console was a Columbus, Ohio pawn shop receipt with Smith's name dated April 16, 2023 with an address for Smith in Hebron, Ohio. Smith had pawned a Milwaukee drill and a Craftsman grinder. (State's Exh. 31).

*Indictment and Trial*

**{¶15}** The Muskingum County Grand Jury indicted Smith on two counts of receiving stolen property; one count for the Honda, a violation of R.C. 2913.51(A) [F4] and one count for the license plate, a violation of R.C. 2913.51 (A) [F5]. Smith pleaded not guilty and the case proceeded to jury trial on August 8, 2023.

**{¶16}** Prior to trial, Smith filed an untimely motion to suppress the statements made by Smith to the Police Chief and Officer Spung.

**{¶17}** At trial, the state presented six witnesses including the owner of the Honda, the owner of the license plate, Jason Browning, and law enforcement officers from the South Zanesville Police Department.

**{¶18}** Smith presented no witnesses and did not testify on his own behalf.

**{¶19}** After hearing the evidence and receiving instructions from the trial court, the jury began its deliberations. After 43 minutes, it returned with a verdict of guilty to both counts of the indictment.

*Sentencing*

**{¶20}** On September 25, 2023, Smith returned to the trial court for sentencing.

**{¶21}** The trial court reviewed the pre-sentence report and noted that Smith had three prior felonies, including a felonious assault. He sentenced him to eighteen months in prison for the theft of the vehicle and twelve months in prison for the theft of the license plate to be served concurrently for a total of eighteen months in prison. Because Smith was on post release control (PRC) from a previous criminal conviction, his PRC was revoked and a prison term for violation of PRC was ordered in the approximate amount of twenty-six months.

**{¶22}** Smith filed this timely appeal arguing the following two assignments of error:

## ASSIGNMENTS OF ERROR

**{¶23}** "I.    THE TRIAL COURT ERRED IN ALLOWING THE STATE TO INTRODUCE THE SPEEDWAY VIDEOS THROUGH CHIEF ROSS'S TESTIMONY BECAUSE IT WAS NOT AUTHENTICATED, AND CHIEF ROSS HAD NO PERSONAL KNOWLEDGE OF IT.

**{¶24}** "II.    SMITH'S TRIAL COUNSEL WAS INEFFECTIVE BECAUSE HE FAILED TO TIMELY FILE SMITH'S MOTION TO SUPPRESS, AND BECAUSE HE DID NOT OBJECT TO INADMISSIBLE EVIDENCE USED TO CONVICT SMITH."

## LAW AND ANALYSIS

### I.  Admissibility of Speedway Video

**{¶25}** Smith first claims that the trial court erred when it allowed the state to introduce at trial the Speedway video tapes that captured Smith's interaction with the Honda through the testimony of Police Chief Ross.  The Police Chief testified at trial that he left the Ollie's parking lot to travel to the Speedway adjacent to Ollie's parking lot to verify that it was Smith who was driving the stolen Honda.  The Police Chief testified that he was familiar with the Speedway gas station and its employees and knew they had a security system with a video camera.  As part of his investigation, he spoke with the manager who he knew from previous experiences and was able to view the video camera surveillance footage for the date and time Smith was present driving the stolen Honda.  After this testimony, the jury was allowed to view the video footage described by the Police Chief. (State's Exh. 32,33, 34).

**{¶26}** The video showed Smith pulling into the Speedway gas station at approximately 2:41 PM driving the stolen Honda.   It also showed Smith purchasing the Slurpee drink that he was later discovered carrying in the parking lot of Ollie's.

**{¶27}** As noted by the state, Smith did not object to the authenticity of the Speedway videos through the testimony of Police Chief Ross.  Therefore, our standard of review is plain error under Crim. Rule 52.  Under Crim.R. 52(B), the party asserting error must show that an error occurred, the error was plain and that the error affected his or her substantial rights.  *State v. Bond,* 2022-Ohio-4150, ¶ 17 citing *State v. Wilks,* 2018-Ohio-1562, ¶ 52.  Notice of plain error may be done only in "exceptional cases and only to prevent a manifest miscarriage of justice."  *State v. Long,* 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶28}** Smith argues that the Police Chief could not authenticate the Speedway video tapes because he was not at the Speedway station when Smith was there and because he had no personal knowledge of the events.  We disagree.

**{¶29}**  Evid.R. 901(A) states:

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

"This threshold requirement for authentication of evidence is low and does not require conclusive proof of authenticity*." State v. Pyles*, 2018-Ohio-4034, ¶ 48 (4th Dist.). "The proponent of the evidence needs show only a reasonable likelihood of authenticity."  *Id.* "Circumstantial, as well as direct, evidence may be used to show authenticity." *State v. Vermillion,*

2016-Ohio-1295, ¶ 14 (4th Dist).   *State v. Lewis,* 2022-Ohio-1850, ¶ 30 (5th

Dist.).

**{¶30}** Video evidence is generally admissible under one of two theories - the

pictorial testimony theory or the silent witness theory.   Under the "pictorial testimony

theory", photographic evidence, including videotapes, is admissible when a sponsoring

witness can testify that it is a fair and accurate representation of the subject matter based

on the personal observation of the witness.  Under the "silent witness theory",

photographic evidence including videotapes is a silent witness which speaks for itself and

is substantive evidence of what it portrays independent of a sponsoring witness.  *State v.*

*Wilson,* 2016-Ohio-5895, ¶ 66 (5th Dist.); citing *Midland Steel Prods. Co. v. Internatl.*

*Workers Local 486,* 61 Ohio St.3d 121, 129-130 (1991).  Testimony from an individual

with personal knowledge of the surveillance system's recording process is not required.

*Vermillion,* 2016-Ohio-1295 at ¶¶ 17, 20 (4th Dist.).

**{¶31}**  Viewing the testimony of Police Chief Ross together with the contents of the

Speedway video footage (State's Exhs. 30, 31, 32), we do not believe there was plain

error in admitting the video footage.  The state introduced testimony that the Police Chief

went to the Speedway gas station the same afternoon he was investigating Smith for the

stolen Honda.  He requested from the manager video footage during the time period Smith

was believed to be at the gas station.  The Police Chief further testified that he was familiar

with the security and video system at the Speedway and the video footage contained a

digital time stamp.

**{¶32}** Under these circumstances, we believe that the trial court could have

reasonably determined that the state satisfied the low threshold of establishing that the

video footage was what the state claimed it to be; namely a fair and accurate depiction of video footage of Smith driving the stolen Honda to the gas station and purchasing a Slurpee drink, which was later discovered in his possession. See *Lewis,* 2022-Ohio-1850, ¶ 30 (5th Dist.) (determining that CVS surveillance footage reviewed by manager was a true and accurate depiction of the CVS on the date of the robbery); *State v. Freeze,* 2012-Ohio-5840, ¶ 68 (12th Dist.) (determining the trial court did not abuse its discretion by admitting surveillance video when investigating officer testified that video was an accurate representation of what he originally viewed); *State v. Farrah*, 2002-Ohio-1918, ¶ 5 (10th Dist.) (determining that trial court did not err in admitting surveillance video that depicted a store robbery authenticated by an officer who had been to the store on prior occasions).

**{¶33}** We hold that it was not plain error to introduce the Speedway video tape footage through the authentication of an investigating officer. The first assignment of error is overruled.

## II.  Ineffectiveness of trial counsel

**{¶34}** In the second assignment of error, Appellant claims that his trial counsel was ineffective for failing to file a timely motion to suppress the statements made by Smith, failing to object to hearsay and failing to object to authentication of Speedway videos by Police Chief Ross.

**{¶35}** The standard for reviewing claims for ineffective assistance of counsel is set forth in the seminal case of *Strickland v. Washington,* 466 U.S. 668 (1984) and adopted by the Ohio Supreme Court in *State v. Bradley,* 42 Ohio St.3d 136 (1989).  These cases require a two-pronged analysis in reviewing a claim of ineffective assistance of counsel.

**{¶36}** First, we must determine whether counsel's assistance was ineffective, i.e., whether counsel's performance fell below an objective standard of reasonable representation and devoid of any of the essential duties owed to a client.  If we find ineffective assistance of counsel under the first prong, then we must determine whether the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect.  This requires a showing that there is a reasonable probability that but for counsel's unprofessional conduct, the outcome of the trial would have been different.  *State v. Atkins*, 2014-Ohio-1091*, ¶* 6 (5th Dist.).

*Failure to timely file Motion to Suppress*

**{¶37}** While Smith's counsel filed a motion to suppress, the motion was not timely and there was no hearing held prior to trial concerning its substance.   However, on the day of trial before the opening statements of counsel, Smith was allowed to put on the record what he believed Smith said, namely, "I have nothing to say."  Smith then went on to deny that he had anything to do with the Honda.  After listening to the arguments of counsel, the trial court overruled the motion to suppress and allowed Smith's statements to be played for the jury.

**{¶38}** Smith's statements captured on the body camera of Officer Spung and later the Police Chief did not make any admissions of guilt.  So, too, Smith never requested a lawyer and acknowledged that he understood his *Miranda* rights.

**{¶39}** This Court has held that when counsel's alleged ineffectiveness involves the failure to pursue a motion or legal defense, the *Strickland* prong breaks down into two components.  "First, the defendant must show that the motion or defense is 'meritorious' and, second, the defendant must show that there is a reasonable probability that the

outcome would have been different if the motion had been granted or the defense pursued." (citations omitted). *State v. Atkins,* 2014-Ohio-1091, at ¶ 7 (5[th] Dist).

**{¶40}** Under the *Strickland* test, then, counsel cannot be found ineffective for failing to file a motion to suppress unless, based on the record, the motion would have been granted. *Id.* at ¶ 8.

**{¶41}** Applying the test here, based on the record, Smith's motion to suppress would not have been granted even if timely filed. So, too, the record indicates that the trial court denied the motion to suppress before the opening statements and again when the body camera of Officer Spung was played for the jury. And even if Smith's statements were not heard by the jury, there is no reasonable probability that the outcome of his trial would have been different.

**{¶42}** Accordingly, Smith has not satisfied either the first prong or the second prong of the *Strickland* test and therefore he cannot demonstrate that he received ineffective assistance of counsel.

*Failure to object to Speedway video authentication by Police Chief Ross*

**{¶43}** Appellant next claims that his trial counsel was ineffective for failing to object to the introduction of the Speedway video tape footage through Police Chief Ross. As discussed above, the Police Chief was permitted to authenticate the Speedway video for purposes of playing it for the jury. The Police Chief testified that he was familiar with the security and video set-up at Speedway, and the video tapes played for the jury were an accurate and true depiction of the videos he obtained the day of Smith's arrest from the Speedway manager as part of his investigation.

**{¶44}** Appellant cannot demonstrate under the *Strickland* test that his trial counsel was ineffective in failing to object to the playing of the Speedway videos.

*Failure to object to hearsay testimony*

**{¶45}** Appellant claims that his trial counsel was ineffective in failing to object to certain hearsay testimony of Police Chief Ross and Officer Spung relating to the telephone call that Browning placed to law enforcement about the stolen Honda. As noted by appellee, brief testimony by law enforcement during an investigation into criminal conduct that explains the circumstances of an investigation is not hearsay. The testimony of the Police Chief and Officer Spunk as to how they began an investigation of the stolen Honda by hearing from a citizen who spotted the stolen vehicle was permissible to establish how they proceeded in the investigation of the stolen Honda. *State v. Bound,* 2004-Ohio-6530, ¶ 34 (5th Dist.) (determining that law enforcement testimony as to what they did in response to conversations engaged in during the course of a criminal investigation is not considered hearsay under Evid.R. 801(C); *State v. Weger,* 2022-Ohio-2204, ¶ 27 (5th Dist.) (information officers discovered as the result of the investigation of a 911 caller was merely part of the investigation and not offered for the truth of the matter).

**{¶46}** So, too, the brief testimony of Robinson about the text message he received from Browning was not offered for the truth of the matter but to explain to the jury the chronology of the investigation of the stolen Honda. *State v. Thomas,* 61 Ohio St.2d 223, 232 (1980) (Statements made by out of court declarant are properly admissible to explain the actions of a witness to whom the statement was made).

**{¶47}** We find no merit to Appellant's claim that his trial counsel was ineffective and that the outcome of the trial would have been different but for his actions or inactions.

The evidence was overwhelming that Appellant was driving the 2023 Honda that belonged to Robinson with plates that had been stolen from a resident of Lancaster, Ohio.

**{¶48}** The second assignment of error is overruled.

## CONCLUSION

**{¶49}** Accordingly, the judgment of the Court of Common Pleas, Muskingum County, Ohio, is hereby affirmed.

By: Wise, J.

King, P. J., and

Baldwin, J., concur.

JWW/kt 0620