[Cite as *State v. Wilson*, 2016-Ohio-5895.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2016CA00071 |
| DENNIS D. WILSON | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:   Criminal appeal from the Canton Municipal
Court, Case No. 2015CRB01469

JUDGMENT:         Affirmed

DATE OF JUDGMENT ENTRY:   September 19, 2016

APPEARANCES:

For Plaintiff-Appellant

TASHA FORCHIONE
Canton City Prosecutor's Office
218 Cleveland Avenue S.W.
Canton, OH 44702

For Defendant-Appellee

DEREK LOWRY
116 Cleveland Avenue N.W.
Suite 800
Canton, OH    44702

*Gwin, P.J.*

{¶1} Appellant Dennis D. Wilson ["Wilson"] appeals his convictions and sentences after a jury trial in Canton Municipal Court on one count of assault and one count of sexual imposition.

*Facts and Procedural History*

{¶2} On March 29, 2015, Melissa Wilson was working at Mr. Hero in the City of Canton. Melissa is mentally handicapped. On the afternoon of March 30, 2015, Melissa's sister contacted the Canton Police Department regarding an incident that occurred between Melissa and a customer at work the previous day.

{¶3} Officer Kalabon made contact with Melissa at her home on March 30, 2015. She found it difficult to get information from Melissa because of Melissa's handicap. Detective Fuelling interviewed Melissa on April 3, 2015. He also found that Melissa's handicap affected her ability to relate the events.

{¶4} Melissa claimed that Wilson was having dinner at the Mr. Hero when she walked by him on her way to the restroom. As she passed his table, Wilson pointed to the floor and said he "wanted his dessert." Specifically, Melissa testified, "he told me to get down there so he can eat me out." She further stated that she went to the restroom, and while she was in there, Wilson was moving the handle trying to get into the restroom. The restaurant's security video shows that after Melissa entered the restroom, Wilson walked to the restroom door and jiggled the door handle. He then returns to his seat. A short time later, he returns to the restroom door and jiggles the handle.

{¶5} As Wilson is walking away from the restroom door, Melissa came out of the restroom. Wilson turns back and appears to attempt to enter the restroom by body

blocking Melissa back inside the restroom. Melissa pushed Wilson and attempted to get away. As she was walking away toward the table where Wilson had been seated, Wilson smacked her buttocks. Melissa turned around and swatted at Wilson. Melissa found this offensive because Wilson is not her boyfriend or even a friend. The entire incident occurred over approximately a one-minute span. From the time Melissa exited the restroom until Wilson swats her on her buttocks, approximately 15 seconds elapsed.

{¶6} Melissa was asked whether she sustained any injuries, and she first responded, "No, but I was - I had to start seeing a psychiatrist." After the incident, Melissa reported what happened to her co-workers and her sister. Melissa testified that she was not permitted to call the police at work because she would be fired. However, she made a police report the following day with the assistance of her sister.

{¶7} Officer Kalabon testified that she learned through the course of her investigation that Wilson made crude sexual comments to Melissa. Officer Kalabon testified that Melissa told her that Melissa entered the restroom. As she exited, Wilson grabbed her by the arm and attempted to force her back inside the restroom. Melissa told the officer that she was able to break free from Wilson and report the incident to co-workers.

{¶8} As a part of the investigation, officers photographed an injury on Melissa's arm. Officer Kalabon observed this injury and described it as a large bruise on Melissa's arm between her elbow and her shoulder. She testified that the bruise appeared to be fresh because of the red and purple coloring. Officer Kalabon was allowed to testify repeatedly, and without objection, that Melissa had told her Wilson caused the bruise in

the photograph marked as States Exhibit 2.  No bruise or injury of any kind was mentioned in Officer Kalabon's report.

{¶9}    Officer Kalabon discussed her testimony regarding a bruise on the victim's arm and the surveillance video with two prosecutors outside of the courtroom.  Detective Fuelling was standing with the group and overheard her comments.  When questioned outside the presence of the jury, Detective Fuelling admitted to being part of the conversation and later admitted that he understood the court's ruling regarding the separation of witnesses.  When the court asked if there was a specific subject discussed, the Detective mentioned the alleged bruise.  The trial court ordered Detective Fuelling not to testify regarding the video or the photograph and issued an instruction to the jury that they may consider the violation of the court's order for separation of witnesses in determining credibility of the witnesses.  Detective Fuelling testified regarding the course of the investigation including his interview of Melissa, his attempts to make contact with Wilson, and the preparation of criminal complaints against Wilson.

{¶10}  The jury found Wilson guilty of both counts.  The trial court sentenced Wilson to 120 days in jail, placed on probation for two years, and ordered to register as Tier I sex offender.

### Assignments of Error

{¶11}  Wilson raises nine assignments of error,

{¶12}  "I. THE APPELLANT'S FIFTH AMENDMENT RIGHT AGAINST SELF INCRIMINATION WAS VIOLATED BY THE USE OF HIS PRE-ARREST SILENCE AS EVIDENCE OF GUILT.

{¶13} "II. THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL BASED UPON THE PROSECUTOR'S VIOLATION OF SEPARATION OF WITNESSES RULE.

{¶14} "III. THE TRIAL COURT ERRED BY IMPROPERLY ADMITTING HEARSAY TESTIMONY.

{¶15} "IV. THE TRIAL COURT ERRED IN ADMITTING THE DETECTIVE'S OPINION REGARDING APPELLANTS'S [SIC.] GUILT.

{¶16} "V. THE STATE DENIED THE APPELLANT A FAIR TRIAL BY USING A WITNESS TO VOUCH FOR THE TRUTHFULNESS OF MELISSA SMITH'S STATEMENTS.

{¶17} "VI. THE TRIAL COURT ERRED BY ADMITTING A PHOTOGRAPH THAT WAS NOT PROPERLY AUTHENTICATED AND WAS NOT RELEVANT.

{¶18} "VII. THE APPELLANT WAS DENIED HIS RIGHT TO FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT.

{¶19} "VIII. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

{¶20} "IX. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF TILE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I.

{¶21} In his first assignment of error, Wilson argues that he was denied a fair trial and due process of law when the state was permitted to present testimony that Wilson, who had not yet been arrested or *Mirandized*, remained silent and/or asserted his right to counsel in the face of questioning by law enforcement.

**{¶22}** Specifically, the prosecutor stated in the opening statement,

Our Detective, Detective Fuelling, attempted to make contact with him by two ways. He called and left a voice-mail and he actually went to the home and left a card. He never heard from the Defendant to get his side of the story.

(1T. at 118). Wilson's counsel failed to object to this statement.

**{¶23}** In addition, the following exchange took place during the detective's testimony,

Q. Did you ever make contact or attempt to make contact with the defendant?

A. I did. I attempted to make contact with him.

Q. How did you do that?

A. I called the phone number I had for him and I went to the residence that was listed and there I talked to his mother and gave her my card.

Q. Did the Defendant ever make any contact with you or come in to give a statement to you about what happened?

A. No.

3T. at 316- 317. No objection was made to this testimony.

**{¶24}** In *State v. Leach,* 102 Ohio St.3d 135, 807 N.E.2d 335, 2004–Ohio–2147, the Ohio Supreme Court held that the "use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination." Id. at ¶ 38, 807 N.E.2d 335. In *Leach*, two women called the police and

accused the defendant of attempted rape and other crimes.  Id. at ¶ 3, 807 N.E.2d 335.

During the state's case-in-chief, the police investigator testified that one of the victims had

provided him with the defendant's phone number.  Id. at ¶ 5, 807 N.E.2d 335.  The

investigator called the defendant and made an appointment to talk with him the next day.

Id. at ¶ 5, 807 N.E.2d 335.  The investigator testified that the defendant did not keep the

appointment, and that the defendant had left a message on the police answering machine

that he wanted to speak with an attorney before talking with the police.  Id.

**{¶25}**  In finding that the state violated the defendant's Fifth Amendment rights,

*Leach* explained: "The state in this case presented testimony that Leach, who had not yet

been arrested or Mirandized, remained silent and/or asserted his right to counsel in the

face of questioning by law enforcement.  This testimony was clearly meant to allow the

jury to infer Leach's guilt.  Otherwise, jurors might reason, Leach would have offered his

version of events to law enforcement."  Id. at ¶ 25.  *See, State v. Powell,* 132 Ohio St.3d

233, 2012-Ohio-2577, 971 N.E.2d 865, ¶156.  In *Powell,* the Supreme Court observed,

> *Leach* applies to the prosecutor's argument that Powell refused to
> turn himself in and assist the police.  This argument implied that Powell had
> something to hide by not turning himself in and telling the police what
> happened.  Under *Leach*, this was an improper comment on Powell's
> prearrest silence and violated his Fifth Amendment privilege against self-
> incrimination.

*Powell* at ¶ 159.

**{¶26}**  However, in *Powell* the state argued to the jury,

The Defendant refuses to come in even after his brother talks to him at the insistence of Detective Gast. He refuses to come in. Imagine what has just occurred. And he refuses to come in to assist.

*Powell* at ¶ 155. In contrast, in the case at bar, the state simply noted that during his investigation, the officer attempted to contact Wilson and his attempts were unsuccessful. However, the prosecutor's statements during opening argument were clearly meant to allow the jury to infer Wilson's guilt. Otherwise, jurors might reason, Wilson would have offered his version of events to law enforcement.

{¶27} We conclude that the prosecutor's improper argument constituted harmless error beyond a reasonable doubt. *See State v. Thompson*, 33 Ohio St.3d 1, 4–5, 514 N.E.2d 407 (1987). The prosecutor's improper comments were brief and isolated. In addition, overwhelming evidence was presented that established Wilson's guilt. The jury was able to view the surveillance recording of the events as they transpired, and to observe the demeanor of the witnesses.

{¶28} Thus, there is little chance that the prosecutor's improper remarks affected the verdict or sentence in this case.

{¶29} Wilson's first assignment of error is overruled.

II.

{¶30} In his second assignment of error, Wilson maintains the trial court erred by not declaring a mistrial when Officer Kalabon discussed her testimony regarding a bruise on the victim's arm and the surveillance video with two prosecutors outside of the courtroom.

{¶31} After witnessing what she believe to be one of the state's witnesses discussing another witness's testimony with a bystander, Wilson's trial counsel made a motion for the separation of witnesses that was granted by the trial court. Specifically, the trial judge ruled,

Okay. Motion to separate witnesses is granted and they are to be instructed not to speak to other witnesses.

2T. at 179.

{¶32} The next morning, however, the prosecutor was observed having a conversation with a witness who had just finished her testimony and the next witness she was calling to the stand. The prosecutor and the witness admitted the subject of this conversation was the questions asked by the Defense and the testimony of the witness who had just left the stand.

{¶33} Defense counsel moved for a mistrial. The trial court overruled the motion for a mistrial and declined to prohibit Detective Fuelling from testifying. The Court, however, did preclude Detective Fuelling from testifying about the bruise, or the photo of the bruise on Melissa's arm.

{¶34} The granting of a mistrial rests within the sound discretion of the trial court as it is in the best position to determine whether the situation at hand warrants such action. *State v. Glover*, 35 Ohio St.3d 18, 517 N.E.2d 900(1988); State *v. Jones*, 115 Ohio App.3d 204, 207, 684 N.E.2d 1304, 1306(7th Dist. 1996).

{¶35} "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened * * *." *State v. Reynolds*, 49 Ohio App.3d 27, 33, 550 N.E.2d 490, 497(2nd Dist. 1988)*.* The granting of a mistrial is necessary only when a fair

trial is no longer possible. *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1, 9(1991); *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749, 771(2001). When reviewed by the appellate court, we should examine the climate and conduct of the entire trial, and reverse the trial court's decision as to whether to grant a mistrial only for a gross abuse of discretion. *State v. Draughn*, 76 Ohio App.3d 664, 671, 602 N.E.2d 790, 793-794(5th Dist. 1992), *citing State v. Maurer* (1984), 15 Ohio St.3d 239, 473 N.E.2d 768(1984) *certiorari denied* (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728(1985); *State v. Gardner*, 127 Ohio App.3d 538, 540-541, 713 N.E.2d 473, 475(5th Dist. 1998).

{¶36} Evid.R. 615 states,

(A) Except as provided in division (B) of this rule, at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. An order directing the "exclusion" or "separation" of witnesses or the like, in general terms without specification of other or additional limitations, is effective only to require the exclusion of witnesses from the hearing during the testimony of other witnesses.

{¶37} The exclusion of witnesses from the courtroom is within the sound discretion of the trial judge, and the exercise of that discretion will not be disturbed absent clear abuse. *See, DeRosier v. United States,* 407 F.2d 959, 961(8th Cir. 1969); *Powell v. United States* 208 F.2d 618, 619(6th Cir. 1953), *cert. denied*, 347 U.S. 961, 74 S.Ct. 710, 98 L.Ed. 1104 (1954).

{¶38} Some of the options available to a trial court when its separation order is violated include instructing the jury on how the violation may reflect on witness credibility, excluding or striking the witness's testimony, or declaring a mistrial. However, a trial court may not exclude a witness unless the party calling the witness encouraged noncompliance with the separation order. *State v. Franklin,* 62 Ohio St.3d 118, 127, 580 N.E.2d 1(1991); State *v. Cox* (1975), 42 Ohio St.2d 200, 202; *Dickson v. State*, 39 Ohio St. 73 (1883). Even then, the decision lies within the trial court's discretion. Id. *Accord, State v. Edighoffer,* 7th Dist. Mahoning Nos. 96 CA 161, 96 CA 162, 1998 WL 896330 at *2; *State v. Lee,* 6th Dist. Lucas No. L-78-252, 1979 WL 207136 at *2 ("The proper remedy for the violation of a court order for a separation of witnesses is not a declaration of a mistrial, or to refuse permission for the witness who violates such order from testifying, but to allow the witness to be cross-examined on such violation so that it may go to the trier of facts as bearing on his credibility."); *State v. DeWitt,* 7th Dist. Mahoning No. 09 MA 68, 2010-Ohio-4777, ¶63 ("A reviewing court should also keep in mind that the preferred sanction for a separation order violation "is simply to allow the transgression to reflect upon the witness's credibility." (Citations omitted)).

{¶39} In response to Wilson's motion for a mistrial, the court voir dired Detective Fuelling outside the presence of the jury. Thereafter, the trial court took three steps to protect Wilson's substantive right to a fair trial. First, because the state participated in the violation of the separation order, the court prohibited Detective Fuelling from testifying concerning the bruising on Melissa's arm and the video surveillance tape, which was the subject of the discussion outside the courtroom. Second, the trial court permitted Wilson

the opportunity to cross-examine Detective Fuelling on the violation of the court's order. (3T. at 346-348). Finally, the trial court instructed the jury,

> The Court was notified that there was a violation of the separation of witnesses and following Officer Kalabon's testimony the Court had ordered that there be a separation of the witnesses, and what the Court means by that is the witnesses are not to be discussing their testimony with others. Officer Kalabon had a discussion with two prosecutors following the testimony at which time Detective Fuelling was present during this discussion. So you're advised of [sic.] that and you may consider this, the violation of the separation of the witnesses, when you consider the credibility of those witnesses.

3T. at 292.

{¶40} Under the facts of this case, we find no abuse of discretion in the trial court's overruling Wilson's motion for a mistrial.

{¶41} Wilson's second assignment of error is overruled.

### III.

{¶42} In his third assignment of error, Wilson argues that it was improper for the court to permit Officer Kalabon to testify to statement's Melissa made to him during the course of his investigation. Wilson contends that Melissa's statements as related by Officer Kalabon were hearsay. Wilson further contends that the testimony violated his right to confrontation. Wilson did not object to the testimony.

**{¶43}** In *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, the Ohio Supreme Court considered the standard to be applied in determining harmless error where a criminal defendant seeks a new trial because of the erroneous admission of evidence under Evid.R. 404(B). The court summarized its analysis in the subsequent decision of *State v. Harris*, 2015-Ohio-166, —— N.E.3d ——, ¶ 37:

Crim.R. 52(A) defines harmless error in the context of criminal cases and provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Under the harmless-error standard of review, "the government bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." (Emphasis sic.) *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15, *citing United States v. Olano*, 507 U.S. 725, 741, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In most cases, in order to be viewed as "affecting substantial rights," "'the error must have been prejudicial.' (Emphasis added.)" *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7, *quoting Olano* at 734, 113 S.Ct. 1770. Accordingly, Crim.R. 52(A) asks whether the rights affected are "substantial" and, if so, whether a defendant has suffered any prejudice as a result. *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 24–25.

Recently, in *Morris*, a four-to-three decision, we examined the harmless-error rule in the context of a defendant's claim that the erroneous admission of certain evidence required a new trial. In that decision, the majority dispensed with the distinction between constitutional and non-

constitutional errors under Crim.R. 52(A). Id. at ¶ 22–24. In its place, the following analysis was established to guide appellate courts in determining whether an error has affected the substantial rights of a defendant, thereby requiring a new trial. First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Id. at ¶ 25 and 27. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Id. at ¶ 28. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt.

Id. at ¶ 29, 33.

{¶44} In the case at bar, Wilson contends that Melissa did not testify to any injury; rather the state was permitted to have Officer Kalabon relate statements that Melissa told him concerning the bruise on her arm.

{¶45} In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court concluded that the Sixth Amendment prohibits the introduction of testimonial statements by a *non-testifying witness*, unless the witness is "unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Id. at 54.

{¶46} In the case at bar, Melissa testified and Wilson was able to confront and cross-examine Melissa and Officer Kalabon concerning the statements. Accordingly, there is no violation of Wilson' right to confront the witnesses against him.

**{¶47}** Evid.R. 801 (D) (1) deals with prior statements of a witness. According to the Staff Notes accompanying the Rule, "[t]here are three types of statements by a witness which may qualify as non-hearsay under this subdivision and may be admissible as non-hearsay to prove the matters asserted in such prior statements. The rule does not limit the use of such statements for either impeachment or rehabilitative purposes. The statements may be used as substantive evidence of the matters asserted. The three categories are (a) prior inconsistent statements of a witness if made under oath subject to cross-examination, (b) prior consistent statements offered to rebut charges of recent fabrication or improper motive, and (c) prior identification by a witness."

**{¶48}** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the exceptions to the rule against hearsay. Evid.R. 802, 803, 804; *State v. Steffen*, 31 Ohio St.3d 111, 509 N.E.2d 383(1987). Statements constitute hearsay only if they were offered to prove the truth of the matters asserted in those statements. If those statements were offered for some other purpose, they are not inadmissible hearsay. *State v. Davis*, 62 Ohio St.3d 326, 344, 581 N.E.2d 1362(1991).

**{¶49}** Evid.R. 803(5) provides for the admission of statements as an exception to the hearsay rule even though the declarant is available as a witness. The state does not specify which exception to Evid.R. 803(5) apply, instead relying upon *State v. Wilbon,* 8th Dist. Cuyahoga No. 82934, 2004-Ohio-1784. In *Wilbon* the witness "repeatedly testified that he could 'not recall' *any details*" regarding the incident. Id., ¶39 (emphasis added).

The case at bar is distinguishable from *Wilbon* because Melissa testified in detail and at length concerning the events in question.

**{¶50}** As a part of the investigation, officers photographed an injury on Melissa's arm. Officer Kalabon observed this injury on Melissa's arm and described it as a large bruise between her elbow and her shoulder. The jury observed the events in real time on the surveillance video. Thus, even without the statements the jury had evidence that a bruise appeared on Melissa's arm. The defense was able to argue the inconsistencies in Melissa's testimony, the lack of record of any injury in the police report and the prosecutor's misconduct in discussing the testimony concerning the bruise with the state's witnesses.

**{¶51}** Based upon the entire record before us, we conclude beyond any reasonable doubt that Wilson was not prejudiced by any error in the admission of Melissa's statements and testimony and that the admission of that testimony, even if in error, had no impact on the verdict. We also conclude that the remaining evidence admitted at trial established Wilson's guilt beyond any reasonable doubt. See, *State v. Arnold*, Ohio Supreme Court No. 2014-0718, 2016-Ohio-1595, __N.E.3d__, ¶ 51 (Apr. 20, 2016).

**{¶52}** Wilson's third assignment of error is overruled.

IV.

**{¶53}** In his fourth assignment of error, Wilson argues the trial court erred in admitting into evidence the investigating officer's opinion that Wilson was guilty of the charges.

**{¶54}** Wilson's characterization of Detective Fuelling testimony is overbroad. On cross-examination defense counsel inquired of Detective Fuelling,

Q.  Okay, Officer, or I'm sorry, Detective Fuelling, in some of your testimony you're indicating that the defendant assaulted the alleged victim and that that's what you saw and that's what you determined in April of 2015. And I want to ask you a question in relation to that.  As a — as an officer of the law you are clear that the final determination of whether an assault actually occurred is not made by you, correct?

A.    That would be incorrect.

Q.    Okay.    So you believe that if you determine somebody is assaulted, then that's -- that person just assaulted, and that's the end of their charge?

A. What I'm saying is under Ohio law, assault being an offense of violence, if the officer was there and was determined that there was probable cause as an example, then they would file an assault charge right then and there.

Q.  I mean that's a charge, that's not a conviction, correct?

A.  That's correct.

Q.  And you believe that if somebody opts to have their case heard by a jury, the jury's the one who makes that determination, correct?

A. Yeah, the jury makes that determination, yes.

Q.  And as it stands, in this case there has been no determination made?

A. No, there has not.

A. So when you use that language and you say assaulted, you're basically saying from your own perception in what you understand with the understanding that there has been no official finding of assault?

A. I guess what my answer to that is we would fill out an assault complaint, which is probable cause, and take it to a judge, is what we do.

Q. Okay, but you acknowledge that you cannot convict on probable cause, correct?

A. No, we cannot convict.

Q. So yes, it's correct you cannot convict?

A. It is correct. We cannot convict based on a charge.

3T. at 325-326. On re-direct examination, the state inquired of Detective Fuelling,

Q. You were asked a little bit about whether your final conclusion in this case is a conviction or probable cause and some people have knowledge of legal jargon but what does probable cause mean to you?

A. Well, probable ca—, --

MS. HIGHTOWER: Objection, Your Honor.

THE COURT: Overruled.

A. What probable cause means is it's -- it's, the sentence is the facts and circumstances within a ordinary person's knowledge would indicate is did that person was or is or did commit the violation that's being alleged, and that would be the determination whether to make the arrest or not, or to go to the prosecutor and file the charges or not.

Q. In this case did you believe there was probable cause to issue complaints?

A. Yes.

Q. And what does it mean when you sign a complaint?

A. Signing the complaint, um, is stating the facts that I have personal knowledge, again, that would a reasonable person then -- myself -- believe that this person committed that crime.

Q. Would you ever sign a complaint where you didn't feel there was sufficient evidence to charge someone?

A. No.

3T. at 337-338. Contrary to Wilson's assertion, Detective Fuelling never testified, "he signed the Complaints in this case because he believed [Wilson] was guilty." (Appellant's Brief at 15).

**{¶55}** Wilson's fourth assignment of error is overruled.

V.

**{¶56}** In his fifth assignment of error, Wilson argues that he was denied a fair trial because the trial court erroneously permitted Detective Fuelling to testify to Melissa's credibility.

**{¶57}** In *State v. Boston*, 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1989), *overruled in part on other grounds by State v. Muttart*, 116 Ohio St.3d 5, 875 N.E.2d 944, 2007–Ohio–5267, the Ohio Supreme Court held that an expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant who claims she has been raped. In *Boston*, the court held that the trial court committed prejudicial error in

allowing a physician to express her opinion that the child had not fantasized her abuse and had not been programmed to make accusations against her father.

{¶58} Recent case law states, "*Boston* does not apply when the child victim actually testifies and is subjected to cross-examination." *State v. Roush*, 10th Dist. No. 12AP–201, 2013–Ohio–3162, ¶ 61, *quoting State v. Benjamin*, 8th Dist. No. 87364, 2006–Ohio–5330, ¶ 19, *quoting State v. Curren,* 5th Dist. No. 04 CA 8, 2005–Ohio–4315, ¶ 26. When the child victim testifies, the trier of fact is able to ascertain the credibility of the victim; whereas, in *Boston*, there was no independent indicia of reliability save for the expert witness who vouched for the child victim. Thus, any error in admitting expert testimony regarding the veracity of a child victim is harmless beyond a reasonable. *Accord, State v. Hughes,* 10th Dist. Franklin No. 14AP-360, 2015-Ohio-151, ¶49; *State v. Benjamin,* 8th Dist. Cuyahoga No. 87364, 2006-Ohio-5330, ¶19; *State v. Curren,* 5th Dist. Morrow No. 04 CA 8, 2005-Ohio-4315, ¶26; *State v. Bump,* 3rd Dist. Logan No. 8-12-04, 2013-Ohio-1006, ¶83; *Hupp v. Brunsman*, S.D. Ohio No. 3:10-cv-413, 2011 WL 4383623 (May 20, 2011), *11.

{¶59} In this case, Melissa testified and was subject to cross-examination. The jury had the opportunity to independently determine the credibility of the victim regardless of the testimony of Detective Fuelling. In addition, the trial court properly instructed the jury that it was the sole judge of the facts and the sole determiner of the credibility of the witnesses. 3T. at 406-406. Since the jury did have an opportunity to independently determine the credibility of Melissa and was properly instructed, any testimony of Detective Fuelling that he believed Melissa's allegations was harmless beyond a reasonable doubt.

{¶60}  Wilson's fifth assignment of error is overruled.

VI.

{¶61}  In his sixth assignment of error, Wilson contends that the trial court erred in admitting the photograph of the bruise on Melisa's arm because the state failed to properly authentic the photograph.

{¶62}  Generally, the admission or exclusion of relevant evidence rests within the sound discretion of the trial court, and its decision to admit or exclude that evidence will not be disturbed absent an abuse of that discretion.  *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343(1987), paragraph two of the syllabus

{¶63}  Evid.R. 901(A) states:

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

{¶64}   Evid.R. R 1002 Requirement of original states,

To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio.

{¶65}   The Rules of Evidence go on to provide that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."  Evid.R. 1003.

**{¶66}** Photographic evidence, including videotapes, can be admitted under a "pictorial testimony" theory or a "silent witness" theory. *Midland Steel Prods. Co. v. U.A.W. Local* 486, 61 Ohio St.3d 121, 129–130 (1991). Under the pictorial testimony theory, evidence is admissible "when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness' personal observation." Id. at 129. The person who took the photograph or video need not testify as long as the witness who does testify verifies that it is a "fair and accurate depiction." *State v. Freeze*, 12th Dist. Butler No. CA2011–11–209, 2012–Ohio–5840, ¶ 66.

**{¶67}** In the case at bar, Officer Kalabon testified that she observed the bruise on Melissa's arm that she characterized as fairly new based upon the discoloration that had occurred. Officer Kalabon further testified that she was present when another officer took the photograph. She testified that she was present when State's Exhibit 2 was taken. She further testified that the only difference between what she observed and the photograph is that the photograph is less detailed and colorful. (2T. at 255).

**{¶68}** Under the facts of this case, the state met its Evid.R. 901 burden. The photograph was admissible evidence with the weight to be afforded it being a matter for the jury.

**{¶69}** Wilson's sixth assignment of error is overruled.

VII.

**{¶70}** In his seventh assignment of error, Wilson contends the prosecutor committed misconduct.

**{¶71}** When evaluating a prosecutorial-misconduct claim, the relevant question is whether the prosecutor's conduct "so infected the trial with unfairness as to make the

resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). To answer that question, we consider two factors: (1) whether the conduct was improper and (2) if so, whether it prejudicially affected the defendant's substantial rights. *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 243.

**{¶72}** Wilson first argues the prosecutor improperly commented upon his pre-arrest silence.

**{¶73}** We have found in our disposition of Wilson's first assignment of error, that the prosecutor's improper argument constituted harmless error beyond a reasonable doubt. *See State v. Thompson*, 33 Ohio St.3d 1, 4–5, 514 N.E.2d 407 (1987). The prosecutor's improper comments were brief and isolated. In addition, overwhelming evidence was presented that established Wilson's guilt. The jury was able to view the surveillance recording of the events as they transpired, and to observe the demeanor of the witnesses.

**{¶74}** Thus, there is little chance that the prosecutor's improper remarks affected the verdict or sentence in this case.

**{¶75}** Wilson next contends that the prosecutor improperly elicited an opinion on the credibility of Melissa.

**{¶76}** We found in our disposition of Wilson's fifth assignment of error that because Melissa testified the jury was able to independently judge her credibility. In the case at bar, we find that, although improper, the officer's testimony concern Melissa's credibility was harmless beyond a reasonable doubt. Therefore, the prosecutor's misconduct did not prejudicially effect Wilson's substantial rights.

{¶77} Wilson's contention that the state improperly elicited testimony that the Detective believed Wilson was guilty is unpersuasive. As we discussed in our disposition of Wilson's fourth assignment of error, the testimony was in response to defense counsel's questions. The Detective simply testified that he need to have probable cause to arrest and that he would not sign a complaint if he did not believe he had sufficient evidence or information to substantiate the charge.

{¶78} Wilson next points to the prosecutor's discussion of the testimony of a witness with witnesses who had not yet testified. While we agree that this was improper, the trial court sanctioned the prosecuting attorney and informed the jury that they could use the transgression when judging the credibility of the witnesses. As we discussed in our disposition of Wilson's second assignment of error, we found no error in the trial court's refusal to grant a mistrial. Therefore, the prosecutor's misconduct did not prejudicially effect Wilson's substantial rights.

{¶79} For the forgoing reasons, Wilson's seventh assignment of error is overruled.

VIII.

{¶80} In his eighth assignment of error, Wilson contends that he received ineffective assistance of counsel. Wilson cites to the issues raised in his previous assignments of error in support of his argument that counsel was ineffective.

{¶81} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122

L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

**{¶82}** Counsel is unconstitutionally ineffective if his performance is both deficient, meaning his errors are "so serious" that he no longer functions as "counsel," and prejudicial, meaning his errors deprive the defendant of a fair trial. *Maryland v. Kulbicki,* 577 U.S. __, 136 S.Ct. 2, 2015 WL 5774453(Oct. 5, 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

**{¶83}** An appellant must demonstrate that he suffered prejudice from his counsel's performance. See *Strickland,* 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. To prevail on his ineffective-assistance claim, an appellant must show, therefore, that there is a "reasonable probability" that the trier of fact would not have found him guilty.

**{¶84}** Because we have found no instances of prejudicial error in this case, we find Wilson has not demonstrated that he was prejudiced by trial counsel's performance.

**{¶85}** Wilson's eighth assignment of error is overruled.

IX.

**{¶86}** In this assignment of error, Wilson contends that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.

**{¶87}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

**{¶88}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶89}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶90}** Wilson was convicted of assault. To find Wilson guilty of assault, the trier of fact would have to find that appellant knowingly caused or attempted to cause physical harm to another. R.C. 2901.01 states, in relevant part: "(3) 'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."

**{¶91}** In the case at bar, a surveillance video corroborated Melissa's testimony. The video, Exhibit 1, shows Melissa working in the restaurant. Wilson can be seen

making comments to her.   Melissa appears to ignore him and goes to the restroom. Wilson watches Melissa walk into the restroom.   Knowing that she is in there, Wilson grabs at the door handle and attempts to get in several times.   When Melissa exits the restroom, Wilson is in front of her. There is a struggle.   Melissa pushes past Wilson to get away.   Wilson then follows her and smacks her buttocks.

{¶92}   As a part of the investigation, officers photographed an injury on Melissa's arm.   Officer Kalabon observed this injury and described it as a large bruise on Melissa's arm between her elbow and her shoulder.   She testified that the bruise appeared to be fresh because of the red and purple coloring.

{¶93}   R.C. 2901.01(A)(3) defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."   This definition clearly mandates that any injury may constitute physical harm and that the gravity or duration of the injury is not a factor for consideration.   *State v. Goble,* 5 Ohio App.3d 197, 199,450 N.E.2d 722(9th Dist. 1982), *State v. Kellum,* 12th Dist. Butler No. CA2009-03-081, 2009-Ohio-6743, ¶16 (citing examples of "physical harm").

{¶94}   We acknowledge that Melissa testified that she was not injured; however, R.C. 2903.13(A) can also be demonstrated by a showing that appellant attempted to cause physical harm.   *See*, *State v. Bolling,* 8th Dist. Cuyahoga No. 95568, 2011-Ohio-2790, ¶20 (domestic violence).   A criminal "attempt" is defined as an act that is a substantial step in a course of conduct planned to culminate in the commission of a crime. R.C. 2923.02(A).

{¶95}   Considering this information, we find that the totality of the circumstances indicate Wilson, in the least, knowingly attempted to cause physical harm to Melissa.

**{¶96}** Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Wilson committed an assault.

**{¶97}** We hold, therefore, that the state met its burden of production regarding each element of the crime of assault and, accordingly, there was sufficient evidence to support Wilson's conviction.

**{¶98}** Wilson was also convicted of sexual imposition. R.C. 2907.06 provides in relevant part,

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

* * *

(B) No person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence.

**{¶99}** R.C. 2907.01 defines "sexual contact,"

(B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

{¶100} Whether touching is done for the purpose of sexual gratification is a question of fact to be inferred from the type, nature, and circumstances surrounding the contact. *State v. Cochran,* 5th Dist. Coshocton No. 03–CA–01, 2003–Ohio–6863, ¶ 15, citing *State v. Mundy*, 99 Ohio App.3d 275, 289, 650 N.E.2d 502(1994).

{¶101} In addition to Melissa's testimony, the jury was able to view the surveillance video recording that corroborated her testimony. That video clearly shows Wilson "touching" Melissa's buttocks. Whether touching was done for the purpose of sexual gratification was a question for the jury.

{¶102} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Wilson committed a sexual imposition.

{¶103} We hold, therefore, that the state met its burden of production regarding each element of the crimes of sexual imposition and, accordingly, there was sufficient evidence to support Wilson's conviction.

{¶104} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable

intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.  * * *.'"  *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978).  Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses.  *See, e.g., In re Brown*, 9th Dist. No.  21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967).

{¶105} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'"  *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81.  In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe."  *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶106} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.  *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118.  *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86

L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

{¶107} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).*

{¶108} In the case at bar, the jury heard the witnesses, viewed the video and photographic evidence and heard Wilson's arguments concerning the lack of physical evidence and the conflicting testimony of Melissa.

{¶109} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678

N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Wilson of the charges.

{¶110} Based upon the foregoing and the entire record in this matter, we find Wilson's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Wilson and his arguments. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Wilson's guilt.

{¶111} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes of assault and sexual imposition beyond a reasonable doubt.

{¶112} Wilson's ninth assignment of error is overruled.

{¶113} For the foregoing reasons, the judgment of the Canton Municipal Court, Stark County, Ohio is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Baldwin, J., concur